IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| INSURANCE COMPANY OF NORTH AMERICA; ZURICH SEGUROS, S.A.; <br><br> Plaintiffs <br><br> v. <br><br> PUERTO RICO PORTS AUTHORITY; PUERTO RICO HARBOR PILOTAGE COMMISSION; SAN JUAN BAY PILOTS CORPORATION; GEORGE MAFFIOLI; FREDDY SOLIS; TRANSPORT MUTUAL INSURANCE ASSOCIATION LIMITED; A-Z INSURANCE COMPANY; HARBOR HOLDINGS & OPERATIONS, INC.; REAL LEGACY ASSURANCE COMPANY, INC.; NAVIGATORS INSURANCE COMPANY; UNIVERSAL INSURANCE COMPANY, INC.; <br><br> Defendants <br><br> PUERTO RICO HARBOR PILOTAGE COMMISSION <br><br> Cross Claimant <br><br> v. <br><br> REAL LEGACY ASSURANCE COMPANY, INC.; <br><br> Cross Defendant | CIVIL 05-2054 (ADC) |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

CIVIL 05-2054 (ADC)                              2

This matter is before the court on motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Puerto Rico Harbor Pilotage Commission (hereinafter "Pilotage Commission" or "Commission") on February 3, 2006. (Docket No. 53.)  This matter was referred to me for a report and recommendation on November 29, 2006. (Docket No. 172.) It is my recommendation that Pilotage Commission's motion to dismiss be GRANTED.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[1]

1. On April 28, 2006, plaintiffs Insurance Company of North America (hereinafter "INA") and Zurich Seguros, S.A. (hereinafter "Zurich") (hereinafter collectively named as "plaintiffs") filed a first amended complaint. (Docket No. 81.) Jurisdiction is invoked pursuant to 28 U.S.C. § 1333 and supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367. (Id. at 1-2, ¶¶ 1-2.)

2. Plaintiffs allege that "[t]his maritime tort action involves compulsory pilotage mandated pursuant to section 4 of the Dock and Harbor Act of Puerto Rico of 1968 [P.R. Laws Ann. tit. 23, § 2412], and the grounding of the M/V KENT RELIANT at the entrance to the port of San Juan on September 18, 2003." (Id. at 2, ¶ 5.)

---

[1] Paragraphs 1 through 11 are identical to those in Section I of Docket No. 189.

CIVIL 05-2054 (ADC)                              3

3.  Plaintiffs allege that they are "the subrogated insurance companies who paid their insureds under policies of marine cargo insurance. The damages which are claimed herein arise from damage to the cargo, salvage, storage, transshipment, general average, and other recoverable expenses, damages and losses." (Id. at 4, ¶ 11.)

4.  Plaintiffs claim that the defendants jointly and severally caused the damages to the M/V Kent Reliant. (Id. ¶ 12.)

5.  Plaintiff INA, an affiliate of ACE USA, is a corporation organized and existing by virtue of the laws of a jurisdiction outside of the Commonwealth of Puerto Rico, with its principal place of business in New York City. The company engages, among other things, in the business of commercial marine insurance, including the cargo insurance on the shipments of rolls of paper carried aboard the M/V Kent Reliant. (Id. at 4-5, ¶ 13.)

6.  Plaintiff Zurich is a division of Zurich Financial Services Group and is a corporation organized and existing by virtue of the laws of the Bolivarian Republic of Venezuela, with its principal place of business located in the City of Caracas. This company engages in, among other things, commercial marine insurance, including the cargo insurance on the shipments of bleached hardwood kraft pulp carried aboard the M/V Kent Reliant. (Id. at 5, ¶ 14.)

CIVIL 05-2054 (ADC)                    4

7.  INA alleges that it "had issued an all risks open cargo policy of marine insurance on behalf of Price & Pierce International, Inc. (hereafter "Price & Pierce"), covering the risks of transportation of the said rolls of newsprint carried aboard the KENT RELIANT, including salvage and general average expenses." (Id. at 22, ¶ 63.)

8.  Zurich alleges that it "had issued an all risks open cargo policy of marine insurance on behalf of Manufacturas de Papel, C.A. (a/k/a MANPA) (hereafter "MANPA"), covering the risks of transportation of the said baled wood pulp carried aboard the KENT RELIANT under Bill of lading No. KLLM 60058374, including salvage and general average expenses." (Id. ¶ 64.)

9.  Zurich alleges that it "paid insurance proceeds to MANPA under its policy for cargo damage, salvage charges, transshipment and storage charges in the amount of $521,177.14." (Id. ¶ 65.)

10. INA alleges that it "paid insurance proceeds to Price & Pierce under its cargo policy for cargo damages, salvage charges, transhipment, storage and administrative charges in the amount of $641,434.27." (Id. at 22-23, ¶ 66.)

11. Plaintiffs claim that they "incurred in attorneys' fees, costs and litigation expenses in its attempt to have the KENT RELIANT respond for the said

CIVIL 05-2054 (ADC)                                5

losses which attorneys' fees, costs and litigation expenses are reasonably estimated at $75,000 as of this date." (Id. at 23, ¶ 67.)

12. Plaintiffs allege that Puerto Rico Pilotage Commission "is an autonomous agency created by Law No. 226 of August 12, 1999, as amended by Law No. 66 of April 11, 2000, [P.R. Laws Ann. tit. 23, §§ 361-361v], with the power to sue and be sued, vested with the jurisdiction and authority to license and regulate pilotage in Puerto Rico, establish traffic rules, adopt and promulgate maritime traffic regulations, and establish the limits for the marine pilots to board and disembark the ships requiring pilotage." (Id. at 6, ¶ 16.)

13. Plaintiffs claim that "Pilotage Commission exercised control and regulation over the rendering and performance of pilotage services in Puerto Rico, and specifically for the port of San Juan . . . ." (Id. at 9-10, ¶ 26.)

14. Plaintiffs affirm that the KENT RELIANT relied upon the Pilotage Commission "to provide the necessary vessel traffic control and pilotage services in order . . . to safely approach, and enter into the port of San Juan." (Id. at 15-16, ¶ 51.)

15. That at the time of his grounding, the KENT RELIANT "was under the exclusive marine traffic control and pilotage scheme designed, planned,

CIVIL 05-2054 (ADC)                           6

managed, implemented and operated by defendants Ports Authority [and] Pilotage Commission, [among others]." (Id. at 16, ¶ 52.)

16. Plaintiffs assert that all defendants are "at fault and/or negligent, jointly and severally, while providing vessel traffic control and pilotage services related to the approach, manuvering [sic] and entry of the KENT RELIANT into the port of San Juan." (Id. ¶ 53.)

17. Specifically, plaintiffs claim that the Pilotage Commission is at fault and/negligent because it "failed to promulgate any marine traffic rules for the port of San Juan, as required by [Law. No. 226, § 5], and tolerated and/or fostered the practice whereby the pilots would assume the role of controlling vessel traffic in and out of San Juan harbor." (Id. at 16-18, ¶ 54(J).)

18. Plaintiffs also claim that Regulation No. 6384 dated December 27, 2001 and promulgated by the Pilotage Commission "places inbound vessels at risk." (Id. at 18-19, ¶ 54(K).)[2]

## II.  STANDARD OF REVIEW

Rule 12(b)(6) allows a litigant to move for dismissal of an action for "failure to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6). Dismissal under the rule is not appropriate "unless it appears beyond doubt that

---

[2]Based on the conclusion that I reached in this report and recommendation, there is no need to further discuss plaintiffs' allegations in regard to Regulation No. 6384.

CIVIL 05-2054 (ADC)                              7

the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In ruling upon a Rule 12(b)(6) motion, the court must accept as true all the well-pleaded factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff. Perry v. New England Bus. Serv., Inc., 347 F.3d 343, 344 (1st Cir. 2003)(citing Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16 (1st Cir. 1998)). The complaint should only be dismissed if it appears that, under the facts alleged, the plaintiff cannot recover under any viable theory. Campagna v. Mass. Dep't of Envtl. Protection, 334 F.3d 150, 154 (1st Cir. 2003) (quoting Nethersole v. Bulger, 287 F.3d 15, 18 (1st Cir. 2002)). Accordingly, to survive a 12(b)(6) motion, plaintiffs must present "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n.2 (1st Cir. 1996) (quoting Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). Even though all inferences must be construed in favor of the plaintiff, the court need not give weight to "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation . . . ." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (quoting Correa-Martínez v. Arrillaga-Beléndez, 903 F.2d 49, 52 (1st Cir. 1990)).

CIVIL 05-2054 (ADC)                              8

### III.  DISCUSSION

Pilotage Commission asserts that it is shielded by the Eleventh Amendment of the United States Constitution because it functions as an arm of the state.  The Commission premises this contention on the fact that it is the successor, in certain aspects, of the Puerto Rico Ports Authority (hereinafter "PRPA").  For such reason, the defendant asserts that plaintiffs are impeded from filing this lawsuit.  (Docket No. 53, at 7-12, ¶ 2.)  In support of its contention, the Commission cites P.R. Ports Auth. v. M/V Manhattan Prince, 897 F.2d 1 (1st Cir. 1990).  In that case, the court decided that "whether the PRPA is entitled to [El]eventh [A]mendment protection depends upon the type of activity it engages in and the nature of the claim asserted against it."  Id. at 10.

As to the Pilotage Commission, the Puerto Rico Harbor Pilotage Commission Act, vested "in that body most of the licensing and regulatory functions previously assigned to the [PRPA]."  Camacho v. P.R. Ports Auth., 369 F.3d 570, 575 (1st Cir. 2004).  Further, in consideration of the Dock & Harbor Act of 1968, the court held that the PRPA "does not train pilots.  It has no control over pilot ship assignments.  The PRPA derives no revenue from the compulsory pilot system. . . . [PRPA] in its relationship with pilots . . . acts as arm of the Commonwealth.  P.R. Ports Auth. v. M/V Manhattan Prince, 897 F.2d at 12.  Therefore, although the M/V Manhattan Prince case is not necessarily controlling because it was decided based on the

CIVIL 05-2054 (ADC) 9

Ports Authority's duties, it is certainly relevant in determining the scope of the licensing and regulatory functions that were vested in the Commission.

Thus, considering the First Circuit's conclusion, I take all the well-pleaded allegations against the Pilotage Commission and draw all inferences in favor of the plaintiffs as to the activities that the Commission was engaged in the day of the events and how these activities relate to the averments in the complaint. The examination entails a reading of Law No. 226, to determine whether plaintiffs' assertions are instead "unsubstantiated conclusions."

The Pilotage Commission was created to

> authorize, regulate, supervise and impose sanctions on pilotage . . . have the authority and the budget to establish disciplinary rules, traffic rules, and to acquire and finance any type of vessel, equipment, or materials needed to carry out its functions. The Commission shall adopt and promulgate maritime traffic regulations and establish the limits for the harbor pilots to board or disembark from the ships. The Commission shall fix the pilotage rates and shall possess and exercise the powers related to the protection of maritime traffic in the waters and ports of the Commonwealth. It shall have the capacity to act autonomously, as well as to sue and be sued.

P.R. Laws Ann. tit. 23, § 361b.

It is evident that the Pilotage Commission continued to act under the regulations that were applicable to the Ports Authority. As such, the Commission serves as an autonomous[3] governmental instrumentality whose prerogatives include the regulation of pilotage services in the navigable waters of Puerto Rico.

---

[3] See P.R. Laws Ann. tit. 23, § 361b.

CIVIL 05-2054 (ADC)                           10

Plaintiffs affirm that the "Pilotage Commission is closely connected to the chain of events that led to the grounding and subsequent damages [of the KENT RELIANT]." (Docket No. 72, at 4, ¶ 3.) However, the enumerated responsibilities that plaintiffs construe as rendering responsibility to the Pilotage Commission are unavailing. There is clearly no relation between the Pilotage Commission's functions and the grounding of the KENT RELIANT.

The only relation that the plaintiffs may arguably make as to the Commission is that it recognized co-defendants San Juan Bay Pilots as the exclusive association representing the pilots. Also that it establishes the limits for the pilots to board the ship under the compulsory pilotage policy, qualifies and takes disciplinary measures over pilots and supervises the San Juan port control. (Id. at 4-6.) However, none of these functions are directly related to the events that led to this complaint. There is no causal connection by which the Pilotage Commission can be found as part of the chain of events that led to the grounding of the KENT RELIANT. The Pilotage Commission is a regulatory agency, and as such, acts as an arm of the state and not in a proprietary manner.

In sum, independent of whether the sovereign immunity is applicable to the Pilotage Commission, it is my conclusion that its functions are mainly regulatory, without having any stake in the events that led to this complaint. Certainly, the Pilotage Commission can sue and be sued, and, it is questionable whether with

CIVIL 05-2054 (ADC)                    11

that language, the Eleventh Amendment can be applicable to it.  Yet, under the well-pleaded factual allegations in the complaint and drawing all inferences in favor of plaintiffs, it is my conclusion that the complaint must be dismissed as to the Pilotage Commission.  This case is premised on Article 1802 of the Puerto Rico Civil Code, thus, the main factual allegations are those that entail alleged damages. Plaintiffs have failed in demonstrating how the Commission caused damages.  The Commission as a regulatory agency, sets forth the requirements for licensing pilots, how the compulsory pilotage services will be conducted and oversees those functions.

Plaintiffs state that further discovery is needed in order to determine the appropriateness of filing this complaint against the Commission, and consequently, this court should deny the motion to dismiss without prejudice. Nonetheless, not only revising the allegations in the complaint, but also revising Law No. 226, it is evident that the Commission had no bearing in the alleged damages suffered by the plaintiffs.

For the events that led to this complaint, the Commission probably made its own investigation pursuant to section 361n and determined whether to take disciplinary actions against Captains Maffioli and Solis, pursuant to section 361m. However, from the imposition of sanctions it does not follow that the pilots are employees of the Commission.  The statutory text in no way refers to the pilots

Case 3:05-cv-02054-ADC-JA   Document 192   Filed 03/14/07   Page 12 of 13

CIVIL 05-2054 (ADC)                              12

as employees of the Commission, rather as individuals that must be licensed and must follow certain regulations approved by and applied by the Commission in order to perform their pilotage services. Even more, the statute provides that the Commission will "appoint or hire all necessary personnel . . . [but such appointees] shall not be active harbor pilots, or former pilots . . . of the Commission." P.R. Laws Ann. tit. 23, § 361f. Indeed, I must not enter into a discussion of whether the sovereign immunity doctrine applies to this case, because based on a basic reading of the statute, it is clear that although the Commission has the power to sue and be sued, the allegations in this complaint do not stem from its primary licensing and regulatory functions.

I believe that plaintiffs have failed in establishing a causal connection between the cargo damages and the Commission. The only well-pleaded assertion is that the Commission licenses and regulates the pilotage services that were allegedly never fulfilled and thus, created the KENT RELIANT's grounding. However, the Pilotage Commission is not responsible for the conduct of the pilots, because they are not employees of the Commission. The Commission is not responsible for every accident that occurs in the harbors, rather than to oversee that the compulsory pilotage services are rendered and that the pilots are duly certified to perform those functions.

CIVIL 05-2054 (ADC) 13

## IV. CONCLUSION

Based on the foregoing, it is my recommendation that the Pilotage Commission's motion to dismiss be GRANTED and the complaint against it be DISMISSED.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of this report and recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. Failure to comply with this rule precludes further appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 14th day of March, 2007.

                                                     S/ JUSTO ARENAS
                                    Chief United States Magistrate Judge